**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Martin J. Clarke*
*Assistant United States Attorney*
*marty.clarke@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4840*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*

November 1, 2015

The Honorable William D. Quarles
United States District Court
District of Maryland
101 West Lombard Street
Baltimore, MD 21201

Re: *United States v. Wilfred T. Azar, III*
Criminal Case No. WDQ-14-0515

Dear Judge Quarles:

I am writing in reference to the sentencing of Wilfred Azar scheduled for **November 10, 2015, at 1:00 p.m**. On March 6, 2015, the defendant pled guilty to a two-count superseding criminal information charging him in Count One with securities fraud, in violation of 15 U.S.C. § 78j(b), and in Count Two with subscribing to a false tax return, in violation of 26 U.S.C. §7206(1). The government is recommending a sentence of imprisonment of **seventy-eight (78) months**.

**A. Applicable Guideline Range**

Pursuant to the guilty plea in this case, the parties originally agreed that the final adjusted offense level of 28 and a criminal history category of Category I resulted in a guideline range of 78-97 months. The Presentence Investigation Report ("PSR") also found that guideline range to be applicable. However, the most recent amendments to the federal sentencing guidelines, promulgated by the U.S. Sentencing Commission on April 15, 2015, and transmitted to Congress on April 30, 2015, go into effect on November 1, 2015. At least one of the amendments will be relevant to the sentencing in this case.

The amendment pertaining to the tables in U.S.S.G. § 2B1.1 will change the upward adjustment to be applied for the amount loss in the case. At the time of the guilty plea, the parties stipulated that the defendant's fraudulent investment scheme resulted in a financial loss to the victims of $7,219,362. Pursuant to the loss table applicable at that time, a loss of more than $7,000,000 but less than $20,000,000 required a 20-level increase. *See* § 2B1.1(b)(1)(K). Under the new loss table, a 20-level increase would require more than $9,500,000 in losses, whereas an 18-level increase would apply when the loss is less than

$9,500,000 but more than $3,500,000. *See* § 2B1.1(b)(1)(J). Consequently, the final adjusted offense level will be 26 (two levels lower), resulting in a guideline range of 63-78 months.[1]

Three people who invested in the defendant's fraudulent scheme will testify briefly at the sentencing hearing about the impact the defendant's criminal conduct has had on their lives and the lives of their family members.

**B. Consideration of § 3553 Sentencing Factors**

**i. Nature and Circumstances of the Offense**

The defendant's longstanding scheme to swindle sixty-four (64) victims of more than $7,000,000 in order to maintain his privileged lifestyle evinces a particularly deliberate and callous plan to financially benefit at the expense of so many people. As more fully described in the Stipulated Statement of Facts and the PSR, Azar was the president and majority owner of Empire Corporation, which owned Empire Towers Corporation, which in turn, owned and operated Empire Towers, a 250,000 square foot, ten-story office building located in Glen Burnie, Maryland. Azar was also a co-owner of other real estate ventures and a yacht brokerage business.

By 2006, Empire Corporation's financial condition had deteriorated to the point that the company was no longer able to pay its expenses and was effectively insolvent. By 2007, Empire Towers had exhausted its lines of credit from lending institutions. At the beginning of 2006, Empire had revenues of only $2,568,832, resulting in negative free cash flow and outstanding debt of $22,149,801. By 2009, the company's revenues dipped to $2,132,934 and its debt ballooned to $36,648,250.

With limited revenues to offset its mounting expenses and debt service during the period of 2006 through 2010, Azar set out to raise more than $7 million by personally selling so-called registered securities (Empire Corporation Bonds) and employing two other people to do the same (J.G. and M.D.). In addition to the falsehoods printed on the bonds themselves, which claimed that they were "registered" and were part of an "issue" that was capped at a particular "aggregate" amount, Azar falsely told potential investors that the proceeds from the sales of the bonds would be used to renovate the Empower Tower office building. Azar promised the investors a 10 percent annual rate of return, compounded daily, and he used materially false and misleading representations and omissions in connection with the offering, including false claims about Empire's financial condition. To maintain the pretense that the bonds were a legitimate investment, he made lulling interest payments to old bond holders to

---

1 Similarly, the tax table relevant to calculating the guideline range for Count Two also changed. Pursuant to the loss table applicable at that time, a tax loss of more than $400,000 but less than $1,000,000 required a 20-level increase. *See* § 2T4.1(H). Under the new loss table, a 20-level increase would require more than $550,000 in tax losses, whereas an 18-level increase would apply when the loss is less than $550,000 but more than $250,000. *See* § 2T4.1(G). Consequently, the final adjusted offense level for Count Two will be 20 (two levels lower). Under the grouping rules, the guideline range for Count One would still control because it has the higher offense level of the two counts. The upward adjustment for the number of victims has also been amended; however, the stipulated 4-level upward adjustment is still applicable because overall at least five victims experienced substantial financial hardship as a result of the offense. *See* § 2B1.1(b)(2)(B

entice new bond purchases. In short, over a very long period of time – approximately four years – the defendant used his reputation in the community to consciously cheat people out of their hard-earned money, which, for many of them, represented almost all their life savings.

**ii. Characteristics of the Defendant**

After conning his investors out of their money, the defendant used virtually of all of it to fund his lifestyle, prop up his other businesses, and make lulling payments to keep his scheme concealed for years. The defendant accessed Empire funds like a personal ATM, including withdrawing approximately $4.14 million as "loans" to himself. The money ended up as cash or was deposited into his personal bank account, then spent on various luxury items, such as a $100,000 Aston Martin automobile, mortgage payments for his $1 million primary residence, $51,000 to an Azar trust, $17,298 for Baltimore Ravens season tickets, and $25,389 in country club dues.

The defendant used the American Express card for Empire Management Services to pay daily living expenses of approximately $420,000, including extravagant dining and travel costs, $34,000 on lavish vacations and meals for his family, and $14,369 in tuition payment for a private university for his son. In addition, the defendant used approximately $1.07 million in investor proceeds as "loans" to keep other businesses afloat, and another $3.31 million to make lulling payments. And finally, the defendant failed to report any of the embezzled income on his 2009 tax return, thereby avoiding $469,936 in federal income taxes.

As the PSR makes clear, the defendant's privileged life provides no excuse or mitigation for the suffering many have endured - and will continue to endure for the rest of their lives – all because of his insatiable greed and pride. As a well-educated businessman in good health and free of any addictions, the defendant stands before the Court in stark contrast to the types of backgrounds and characteristics of the many defendants this Court has been called upon to judge and sentence.

**iii. Just Punishment**

The callous and mendacious pattern of solicitation used by the defendant for so many years to lure so many people into his scheme requires a very severe sentence, especially since it is unlikely that the victims will see any significant restitution. To give some closure to the victims, dissuade other would-be fraudsters in the business and investment community, promote respect for the law, and reflect the seriousness of this offense, a sentence of 78 months of imprisonment is warranted.

Please let me know if the Court needs any additional information before the sentencing hearing.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _________/s/_____________________________
Martin J. Clarke
Assistant United States Attorneys

cc: Counsel for the Defendant (via CM/ECF)
Melissa McGuinness, USPO